Low Cost Immigration Assistance Inc., A Non-Profit
P.O. Box 2162
Yakima, Washington, 98901
929777 1694
waynerudder@lowcostimmigrationassitance.org
aampubjusccsc@gmail.com

FILED
APR 30 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF SAN FRANCISCO

CV 13 1967 YGR
#Case #

Governorwayne2012.info
Adoptionsin60days.com
Plaintiff

Vs

Intuit Inc.
Homestead Technologies, Inc
2632 Marine Way
Mountain View, CA 94043

COMPLAINT FOR DAMAGES
For:
FALSE ADVERTISING
BREACH OF PROMISE;
BREACH OF CONTRACT;
INFLICTION OF EMOTIONAL DISTRESS,
Under 28 USC 1332 Diverse Citizenship
For: 28,000,000

Jury Trial Demanded

---

This is a suit for damages against the Defendants and a Jury trial is demanded.

## JURISDICTION

Intuit is the corporate head of a Corporation which includes subsidiary Homestead Technologies. They are based in Santa Mateo California and is a web based business.

## Venue

Venue is proper in this District since the Defendants are incorporated in this District.

## FACTS

1. On or about April of ,2009 the Plaintiff contacted Intuit to seek that he be provided a website by Intuit for his business. That business was Immigration Public Justice, Low Cost Immigration Assistance Inc.

2. After days of attempting to get the website going the Plaintiff grew frustrated and called Homestead. He was informed that a website would require that the input a credit card in order to finalize the agreement and purchase.

3. This led the Plaintiff in another redirection only to receive repeated emails from Homestead indicating that no credit card was needed. He received one such email on 5/31/2009 where it stated that the credit card was not needed.

4. On 6/4/2009 the Plaintiff received another email from Homestead where he had informed them that he was not looking at a website with their company anymore, but they persisted with the offers of beginning the process without a credit card.

5. On 6/26/2009 the Plaintiff sent to Homestead a showing that their actions were false advertising.

6. Plaintiff then attempted the process several times trying to get on a website that would populate his business with clients.

7. When the Plaintiff was unsuccessful, the Plaintiff called or attempted to reach Homestead Technologies. After three hang-ups and several wrong numbers to reach the headquarters, the Plaintiff began to process emails to the support site to seek that the support site guide him to recovery for his time and efforts and their false advertising.

8. Ultimately, a deal was struck with Homestead which provided that the Plaintiff would receive four websites from Homestead for a period of two years which would be free and a monetary consideration.

9. Two years later in June of 2012 the Plaintiff managed to start the use f two of the websites, adoptionsin60days.com and governorwayne2012.info. Both websites were utilized for gaining an advantage in different areas. The adoptions website was a presentation for the cheapest adoptions in the United States at 2,500. And governorwayne2012.info was the campaign vehicle for the candidacy of the Plaintiff for the seat of Governor or Washington.

10. During September of 2012 Homestead killed both websites for over thirty days. This was at the height of the campaign where the Plaintiff would need the website for donations and to give information to his base. According to Homestead the action was done because they did not have a credit card on file with which to re-bill the Plaintiff.

11. Plaintiff contacted Homestead and they then put the sites back on for about fifteen days. They kept asking for a credit card throughout the entire period. The Plaintiff contacted Homestead and patiently explained that the websites had been given for two years and that the two years had not begun until the websites were accessed in 2012.

12. It should be noted that from 2009 through 2012 there had been attempts to get the websites going which were interfered with by the repeated requests for credit card information or undetailed instructions on how to get the websites going. Log in was a particular problem..

13. Throughout the period of September, October, November, December of 2012 and January, February, and March of 2013 the websites have been off air and are unable to be accessed.

14. On 8/4/10 the parties came to an agreement that in lieu of suit the Plaintiff would receive four websites for a period of two years. This was a tentative agreement to be followed by fulfillment.

15. On or about 9/27/2010 the parties finally settled the issue and on 10/8/2010 the Homestead team provided the PIN for the websites.

16. Yet between 10/8/2010 and 10/27/11 the Plaintiff's staff had difficulty enabling the sites. Over a year had passed during which they were to have had access and more than twenty emails went back and forth trying to get the websites on line.

17. On the date of 10/27/2011 the first website was registered. This would mean that two years from the date of 10/27/11 the website, would be ongoing for a period of two years on cityofnewberglowincomeimmigrationassistance.org. The last day for use under the terms would be 10/27/2013.

18. Although the other websites came on later, governorwayne2012.info and adoptionsin60days.com came on line almost a year after in May of 2012, we will use the operative date of 10/27/2011 as the date for this suit because it shows that regardless of the dates that followed, Homestead was still in error to take the websites down and to interfere with commerce of the Plaintiff's businesses.

19. Homestead made a deal, a contract and a promise to provide the websites for a period of two years without cost. They breached the contract by shutting down the websites in August of 2012. Homestead actually began to try to bill the credit card on file for an additional two years without the permission of the Plaintiff and there had been previous charges that were not permitted under the agreement.

20. The website governorwayne2012.info was an informative tool to be provided to the voters of Washington so they could be informed as to the Plaintiff's candidacy and his platform to be able to make wise decisions before voting in the election.

21. In this century the website is the tool that has made the difference in election and not being elected.

22. The Plaintiffs positions were extremely populist to the extent that were his positions presented to the public the majority would favor his candidacy.

23. Homestead's actions harmed the candidacy and did make Homestead liable.

24. Similarly, the adoptionsin60days.com website was such that it provided to the public a distinct change in the way adoptions are performed at a price that is fraction of what people normally have to pay for the service. The actions of the Homestead team derived the Plaintiff of income and caused the Plaintiff and his company harm and injury.

25. From all appearances it appears as Intuit's staff and their different departments did not communicate on a common issue so one person would do or say one thing while another would do quite another on the very same issue.

26. The fact is that a member of intuit contacted the Plaintiff and stated that the websites could be aired as @homestead.com instead of .info and .com. This person did this as a temporary measure only to have the sites taken down anyway in order to force the application of a credit card.

27. Repeatedly, Homestead made contracts about what they would do and broke those contracts repeatedly. For instance, the last instance, Homestead said they would open the sites for a week to allow the material to be removed. They opened it for three days then shuttered the sites without giving the information as to how the contents could be removed.

28. It appears that Homestead is not focused upon the art of customer service and is generally focused upon the taking of money from credit cards given to them for reference only. On at least two occasions they have taken money from credit cards held by the Plaintiff without permission.

29. The Plaintiff seeks a jury trial and a finding of liability against Intuit and their subsidiary Homestead and seeks an award in excess of 28,000,000.

Dated: 4/22/2013

Ss//Wayne R. E .Rudder.